**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| ENERGY POLICY ADVOCATES, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 23-507 (RC) |
| | : | | |
| v. | : | Re Document No.: | 15 |
| | : | | |
| SECURITIES AND EXCHANGE | : | | |
| COMMISSION, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

In this case arising under the Freedom of Information Act ("FOIA"), 5 U.S.C § 552,

Plaintiff Energy Policy Advocates ("EPA") seeks certain documents from Defendant Securities

and Exchange Commission ("SEC").  In January 2023, EPA submitted a FOIA request to the

SEC seeking certain communications between then-SEC Senior Counsel for Climate and ESG,

Kristina Wyatt, and outside organizations Persefoni AI Inc. ("Persefoni") – a climate

management and accounting platform company – and Environmental Resources Management

("ERM") Group – a sustainability consultancy firm.  One month later, in February 2023, Plaintiff

sued Defendant to compel the agency to disclose a subset of records, arguing that those entities

encouraged the SEC to issue climate change regulations in their discussions regarding the SEC's

proposed climate rulemaking.  After the SEC submitted several responses to Plaintiff's FOIA

request, Plaintiff objected to a particular set of the SEC's withholdings made under several FOIA

exemptions.  The SEC moved for summary judgment, which EPA opposes, and the parties

agreed that summary judgment will address the SEC's withholdings under Exemptions 4 and 5.

For the reasons set forth below, the Court finds that the SEC properly asserted FOIA Exemptions 4 and 5, and it will grant its motion.

## II. FACTUAL BACKGROUND

In January 2023, EPA submitted a FOIA request to the SEC seeking "all electronic mail a) sent to, from or which copies (whether as cc: or bcc:) then-SEC Senior Counsel for Climate and ESG Kristina Wyatt, which b) also i) includes, anywhere in an email or email 'thread', whether as a correspondent's address or otherwise in the body of, e.g., a forwarded email, the word Persefoni (including but not limited to in, e.g., @persefoni.com), or ii) is sent to, from, or copies a) @ceres.org.org [sic], and/or b) @ERM.com, and iii) are dated at any time from September 1, 2021 through March 6, 2022, inclusive." Def.'s Statement of Material Facts Supp. Mot. Summ. J. ("SMF") ¶ 1, ECF No. 15-1; *see also* Compl. ¶ 8, ECF No. 1. In April 2023, the SEC told Plaintiff that it identified approximately 9,600 pages of records that might be responsive to the request; and in July, August, September, and October 2023, the SEC FOIA Office issued its responses to Plaintiff's FOIA request that included pages that were withheld or redacted in part pursuant to FOIA Exemptions 4 and 5, and 6, 5 U.S.C. §§ 552(b)(4), (5), (6). SMF ¶¶ 5–6.

After the SEC's final response to the FOIA request in October 2023, Plaintiff's counsel informed the SEC's counsel that Plaintiff objected to a subset of the withholdings made under FOIA Exemption 5, which is detailed in a 96-page PDF "consisting of excerpts of records that the SEC had released in connection with the FOIA request." SMF ¶ 10; *see* Decl. of Mark Tallarico ¶ 6, ECF No. 15-6 ("Tallarico Decl."). In December 2023, the SEC provided Plaintiff with an initial *Vaughn* Index explaining the withholdings that Plaintiff objected to, which included additional assertions that some information should also be withheld under Exemption 4.

SMF ¶ 10.  Later that month, the SEC's FOIA Office issued an additional response to Plaintiff's FOIA request, which included six pages of records with modified withholdings under Exemptions 4, 5, and 6, 5 U.S.C. §§ 552(b)(4), (5), (6).  Def.'s Mot. for Summ J. ("Def.'s MSJ") at 3, ECF No. 15-8.  As mentioned, the parties agreed that the issues to be resolved through summary judgment are the SEC's withholding of information under FOIA Exemptions 4 and 5 from the 96-page PDF consisting of excerpts or records that the SEC had released in connection with the FOIA request, which Plaintiff's counsel sent to the SEC's counsel in October 2023.  *Id.*

### III.  LEGAL STANDARD

FOIA serves "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)).  The Act "directs that 'each agency, upon any request for records . . . shall make the records promptly available to any person' unless the requested records fall within one of the statute's nine exemptions."  *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (quoting 5 U.S.C. § 552(a)(3)(a)).  "Consistent with the Act's goal of broad disclosure," those exemptions should be "given a narrow compass."  *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 151 (1989).  "The agency bears the burden of establishing that a claimed exemption applies."  *Citizens for Resp. and Ethics in Wash. v. U.S. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014) (citations omitted).  To meet its burden and qualify for an exemption, the agency may "rely on declarations that are reasonably detailed and non-conclusory." *Pinson v. Dep't of Just.*, 313 F. Supp. 3d 88, 106 (D.D.C. 2018).  Such declarations must "provide 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'"  *Elec. Priv. Info. Ctr. v. U.S. Drug Enf't Agency*, 192

F. Supp. 3d 92, 103 (D.D.C. 2016) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)).

Because FOIA cases do not often involve disputed facts, they "are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009) (citations omitted).  In reviewing a motion for summary judgment under the FOIA, the Court has an obligation to review the record *de novo*.  *See* 5 U.S.C. § 552(a)(4)(B). Even when a plaintiff does not challenge the adequacy of an agency's search for responsive records, an "agency must demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (internal citation and punctuation omitted).  Summary judgment is justified "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In assessing whether the movant has met that burden, a court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence." *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008) (citations omitted).

"Typically, the agency demonstrates the applicability of a FOIA exemption by providing affidavits [or declarations] regarding the claimed exemptions." *Shapiro v. U.S. Dep't of Just.*, 893 F.3d 796, 799 (D.C. Cir. 2018).  "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.* (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citations omitted)).  If a FOIA exemption applies, an agency cannot withhold any records unless it also "reasonably foresees that disclosure would harm an interest protected by" the exemption.  5 U.S.C. § 552(a)(8)(A)(i)(I); *Reps. Comm.*

*for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 369 (D.C. Cir. 2021) (explaining the FOIA Improvement Act of 2016's "foreseeable harm" requirement). "[E]ven where exemptions apply, the [agency] must [also] take reasonable steps necessary to segregate and release nonexempt information." *Nat'l Ass'n of Minority Veterans v. U.S. Dep't of Veterans Affs.*, 642 F. Supp. 3d 83, 97 (D.D.C. 2022) (quotation and citations omitted).

## IV.  ANALYSIS

As for the issues to be resolved through summary judgment, the Court will consider the SEC's assertions of FOIA Exemptions 4 and 5 to justify its redactions and withholdings. The EPA challenges all the SEC's FOIA Exemption 4 assertions, but for FOIA Exemption 5, the EPA challenges all but the attorney-client privilege assertions. Pl.'s Opp'n Mot. Summ. J. ("Pl.'s Opp'n") at 1, ECF No. 17. After initially considering the adequacy of the SEC's search, the Court will examine (1) the applicability of each exemption asserted, (2) whether the foreseeable harm requirement was met for each exemption, and (3) whether all reasonably segregable material has been released.

### A.  Adequacy of the Search

Plaintiff does not dispute that the SEC conducted an adequate search for records responsive to its FOIA Request. ECF 14 at 2. However, the Court still considers the adequacy of the SEC's search by bearing in mind the individual circumstances of the case and by using the reasonableness standard. *Truitt v. Dep't of State,* 897 F.2d 540, 542 (D.C.Cir.1990). Instead of considering whether other responsive documents may exist, it evaluates whether the search itself was adequate. *Steinberg,* 23 F.3d at 551. There is no requirement that an agency search through all of the documents in its systems, but the agency bears the burden of conducting a good faith, reasonable search of the systems likely to include the information in question. *Oglesby v. U.S.*

*Dep't of Army,* 920 F.2d 57, 61–62 (D.C. Cir. 1990).  "Once an agency has provided adequate [declarations], the burden shifts back to the plaintiff to demonstrate a lack of a good faith search."  *Moore*, 601 F. Supp. 2d at 13.

If a declaration is reasonably detailed and not refuted by evidence of bad faith or otherwise contrary evidence, an agency may prove the reasonableness of its search if the declaration is made by any responsible agency officials.  *Mil. Audit Project v. Casey,* 656 F.2d 724, 738 (D.C. Cir. 1981).  An agency's declarations are received with "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."  *SafeCard Servs. v. SEC,* 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal citation and quotation omitted).  Here, the SEC included a declaration by Mark Tallarico, who is an attorney in its Office of the General Counsel ("OGC") and the FOIA Liaison for OGC, responsible for "coordinat[ing] OGC's searches for documents that may be responsive to a FOIA request."  Tallarico Decl. ¶ 1.  It also included a declaration by Lizzette Katilius, the Branch Chief in the SEC FOIA Office, who is responsible for "coordinating and processing FOIA requests" and "organizing searches for documents responsive to FOIA requests . . ."  Decl. of Lizzette Katilius ¶ 1, ECF No. 15-2 ("Katilius Decl.").  Through these declarations, which include the SEC personnel that were knowledgeable about and responsible for the searches conducted in connection with Plaintiff's FOIA request, the SEC has shown that it conducted a reasonable search to uncover all relevant documents in response to EPA's request.
*See Steinberg,* 23 F.3d at 551.  The EPA has also cited no contrary evidence, nor has it submitted evidence of bad faith, so the Court holds that the SEC has satisfied this burden.

### B.  Exemption 4

1.  Application of Exemption 4

The SEC claims Exemption 4 to withhold certain documents involving ERM Protected Information and Persefoni Protected Information.  The SEC defines "ERM Protected Information" as "notes taken by SEC staff during a meeting between ERM and SEC staff as well as slides that ERM prepared and presented to SEC staff during that meeting."  Def.'s MSJ at 9. Additionally, it defines "Persefoni Protected Information" as "confidential information about Persefoni's strategic development goals and plans concerning costs for its products."  *Id.* at 10. The SEC claims that these documents "consist[] of information about Persefoni's strategic development goals and plans concerning costs for its products" ( Decl. of Peter Bartolino ¶ 8, ECF No. 15-5 ("Bartolino Decl.")), "information that ERM presented to SEC staff," including information represented in meeting notes and slides (Decl. of Ann Chilton ¶ 6-10, ECF No. 15-4, ("Chilton Decl.")), and information that Persefoni provided to SEC staff (Bartolino Decl. ¶ 6).

FOIA Exemption 4 exempts from disclosure "trade secrets and commercial or financial information obtained from a person" that is "privileged or confidential."  5 U.S.C. § 552(b)(4). "Unlike many other types of information subject to an agency's control, materials implicating Exemption 4 are generally not developed within the agency."  *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 148 (D.C. Cir. 2006).  To properly apply this exemption, the agency must establish that the records are "(1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential."  *Pub. Citizen Health Rsch. Grp. v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983).  After demonstrating that the elements of Exemption 4 are applicable, the agency must also "explain how disclosing, in whole or in part, the specific information withheld under Exemption 4 would harm an interest protected by this exemption, such as causing 'genuine

harm to [the submitter's] economic or business interests.'" *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 119 (D.D.C. 2019).

Plaintiff does not dispute that the withheld information is commercial or financial. Plaintiff also does not question whether the information was "obtained from a person." However, Plaintiff argues that the SEC's justification for the exemption does not include sufficient evidence to determine that the information is "confidential." Pl.'s Opp'n at 4–12. The SEC claims that it met its burden because it "appropriately consulted with Persefoni and ERM about whether information it had provided to the SEC contained confidential information (Chilton Decl. at ¶¶ 5–9; Bartolino Decl. at ¶¶ 5–6), ERM and Persefoni "expected that under the SEC's statutes, regulations, and practices . . . the SEC would not disclose" the withheld information ( Chilton Decl. at ¶ 15;  Bartolino Decl. at ¶ 12), and ERM's "information about how it determines its billing rates, labor categories, and project structure information" is confidential because "such information would give an advantage to competitors." (Supplemental Chilton Decl. ¶¶ 6–9, ECF No. 18-1).

First, although Plaintiff does not challenge whether the SEC's withholdings are commercial or financial and whether the records were obtained from a person, the Court nonetheless briefly considers these issues to confirm that the agency has satisfied its burden. The terms "'commercial' and 'financial' in the exemption should be given their ordinary meanings." *Pub. Citizen Health Rsch. Grp*, 704 F.2d at 1290. Information is "commercial" or "financial" so long as the submitter of the information has a "commercial interest" in it. *See Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 319 (D.C. Cir. 2006). The D.C. Circuit has given "commercial interest" a broad definition; as it includes information that "reveal[s] basic commercial operations," "relate[s] to the income-producing aspects of a business," or bears upon

the "commercial fortunes" of an organization.  *Id.*  (internal quotation marks and citations

omitted).  Here, the Court holds that the ERM Protected Information and the Persefoni Protected

Information is such that ERM and Persefoni have established a "commercial interest," as their

economic or business interests would be harmed if the information were released.

      Second, the Court also concludes that the information in question was obtained from a

person.  A "person" under FOIA, includes "an individual, partnership, corporation, association,

or public or private organization other than an agency[.]"  5 U.S.C. § 551(2).  Because the

information in question was obtained from ERM and Persefoni – both outside organizations and

non-governmental entities – the Court holds that the SEC has satisfied this burden.

      Lastly, information is confidential for the purpose of Exemption 4 when it is "treated as

private by its owner."  *Wilson v. FCC, No. 21-cv-895*, 2022 WL 4245485, at *10 (D.D.C. Sept.

15, 2022).  Although Plaintiff asserts that "SEC's affidavits do not bear out SEC's assertions of

confidentiality" because "no party appears to have sworn that the information in SEC's

possession was ever treated as confidential within the meaning of applicable laws and SEC's

own regulations" (Pl.'s Opp'n at 1), the SEC is correct that it has satisfied this burden because

both "ERM and Persefoni stated in their declarations that they "expected that under the SEC's

statutes, regulations, and practices regarding the treatment of non-public information, the SEC

would not disclose" the withheld information.  Chilton Decl. at ¶ 15; Bartolino Decl. at ¶ 12.

This demonstrates that the information was treated as private by its owners – both ERM and

Persefoni.  ERM also explicitly "asked SEC staff not to disclose the information that ERM had

provided" (Chilton Decl. at ¶ 16), which further satisfies this burden.

      This Court has previously held that there are two conditions that satisfy the "confidential"

requirement for the purpose of Exemption 4 – that information is confidential when it is "treated

as private by its owner,' and 'provided to the government under an assurance of privacy.'" *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 109 (quoting *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019)).  The SEC is right that the second prong of the requirement – the government's assurance of privacy – is no longer necessary to satisfy this requirement. *Wilson*, 2022 WL 4245485, at *10 ("[c]ourts in this Circuit have declined to read the word confidential to impose a blanket requirement that the government provide an assurance of privacy in every case in which it asserts Exemption 4, in part because doing so would prompt many fairly arbitrary disputes over whether such an assurance can be implied. If anything, courts here have taken the position that privately held information is generally confidential absent an express statement by the agency that it would not keep information private, or a clear implication to that effect (for example, a history of releasing the information at issue)." (citations omitted)). Therefore, because ERM and Persefoni treated the withheld information as private and expected that the SEC would not disclose it, the Court holds that these withholdings should be considered confidential.

### 2.  "Foreseeable Harm" Requirement

The Court considers whether the SEC satisfied the "foreseeable harm" requirement needed to claim a FOIA exemption.  "Congress has protected the public's right of access and balanced those interests in nine exemptions that are to be narrowly construed and, apart from Exemption 3, subject to the foreseeable harm requirement."  *Leopold v. Dep't of Just.*, 94 F.4th 33, 38 (D.C. Cir. 2024).  "To meet this requirement, the [SEC] must explain how disclosing, in whole or in part, the specific information withheld under Exemption 4 would harm an interest protected by this exemption, such as causing genuine harm to the submitter's economic or business interests and thereby dissuading others from submitting similar information to the

government."  *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 113 (internal citation omitted) (cleaned up).  Though EPA contests the SEC's foreseeable harm assertion, the Court finds that the SEC has satisfied its burden.  For ERM, the SEC argues that it is reasonably foreseeable that releasing information about its "pricing strategy, labor categories, and project structure information" would cause foreseeable harm because it is "proprietary and confidential, and disclosure of such pricing and project information would give an advantage to competitors" because they "could use this information to undercut ERM in the bidding process and to entice away ERM's staff."  SMF ¶ 22.  Similarly, for Persefoni, the SEC also asserts that releasing its "strategic development goals and plans concerning product costs" would cause foreseeable harm because it is "proprietary and confidential, and disclosure of such information would give an advantage to competitors."  SMF ¶ 29.  For both companies, the SEC explains how the disclosure of the withheld information would have a direct impact on its business and financial interests.  The SEC "concretely explain[s] how disclosure would cause harm" to what Exemption 4 protects by explaining a "link between the specified harm and the specified information contained in the material withheld."  *WP Co. LLC v. U.S. Small Bus. Admin.*, 575 F. Supp. 3d 114, 119–20 (D.D.C. 2021) (cleaned up); *accord Reps. Comm.*, 3 F.4th at 369–71.

Additionally, and with respect to a government agency disclosing pricing data and similar information specifically, the Circuit has previously held that information such as pricing and business strategies are exactly the type of confidential information that are meant to be protected by FOIA Exemption 4.  *See Citizens for Resp. and Ethics in Wash. v. U.S. Dep't of Just.*, 58 F.4th 1255, 1263 (D.C. Cir. 2023) ("[Plaintiff] does not appeal the [Defendant]'s withholding of clearly commercial information, such as 'price and contract term negotiations' and 'pricing and business strategies,' which fall neatly within Exemption 4.") (citation omitted); *see also Buzzfeed*

*Inc. v. Department of Justice*, 2023 WL 6847008 1, 6 (D.D.C. 2023) ("The declarations pointed to other information, including pricing data, existing customer information, and general proprietary services, which both were included in the emails and can be reasonably foreseen to cause economic harm to the company(s) if disclosed."). The Court agrees, and disclosing such information should continue to be protected by Exemption 4. The SEC adequately explains the link between the withheld pricing and project information and the foreseeable harm that it would cause – giving an advantage to competitors by allowing them the opportunity to use it in the bidding process and to lure away ERM's staff. Therefore, the Court finds that the SEC has satisfied the foreseeable harm requirement, and its Exemption 4 withholdings are proper.

### C.  Exemption 5

#### 1.  Application of Exemption 5

The SEC withholds other materials under Exemption 5, including "certain information from parent emails" and "certain attachments to the emails." SMF ¶ 30. The SEC states that it withheld these records under the deliberative process privilege and attorney-client privilege and that the disclosure of these withheld documents would "jeopardize the candid and comprehensive discussions that are essential for efficient and effective agency rulemaking and policy development" (*Id.* ¶ 38) and confuse the public with discussions about the rulemaking decisions that the SEC did not make. As mentioned, Plaintiff waives any arguments it might have under the attorney-client privilege in this case, but it argues that Exemption 5 should otherwise not apply because "the relevant correspondence was not deliberative within the meaning of the law" and the harm with respect to these withholdings is not foreseeable. Pl.'s Opp'n at 1.

Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). The

12

exemption covers documents "normally privileged in the civil discovery context," *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 365 F.3d 1108, 1113 (D.C. Cir. 2004), such as materials protected by the attorney-client privilege, the attorney work-product privilege, and "what is sometimes called the 'deliberative process' privilege." *See U.S. Dep't Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

### 2. Deliberative Process Privilege

To withhold documents under Exemption 5 through the deliberative process privilege, an agency must show that releasing the specific records sought "'would' chill future internal discussions." *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020). Additionally, an intra-agency communication must be both predecisional and deliberative. *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015). For the predecisional requirement, the document must be "generated before the adoption of an agency policy." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). For the deliberative requirement, the document must be "part of the agency give-and-take of the deliberative process by which the decision itself is made." *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975).

Addressing Plaintiff's challenge to the SEC's *Vaughn* Index first, Plaintiff contends that the SEC's *Vaughn* Index fails to include explanations about how certain documents contributed to "administrative decisionmaking" and "includes only the names of parties without explaining the role of those parties in any relevant decisionmaking process." Pl.'s Opp'n at 6. However, the SEC argues that it includes "the author and recipients of the record and states whether the record is intra- or inter-agency" and "each entry also contains a description of the withheld information and explains the aspect of SEC climate policy and rulemaking development to which

the withheld information relates."  Reply to Pl.'s Opp'n ("Reply") at 12.  As the SEC articulates, the Court has not established a blanket requirement that a *Vaughn* Index must contain the roles of every individual mentioned in the withheld records.  *Skull Valley Band of Goshute Indians v. Kempthorne*, No. 04-cv-339, 2007 WL 915211, at *5 (D.D.C. Mar. 26, 2007) ("There is no set formula for a *Vaughn* index; so long as the agency provides the Court with materials providing a 'reasonable basis to evaluate the claim of privilege,' the precise form of the agency's submission . . . is immaterial.").  After Plaintiff's challenge, the SEC also provides a supplemental declaration that includes the offices and titles of the SEC staff relevant to the withheld records. *See* Supplemental Tallarico Decl., ECF No. 18-2.  The Circuit has explained that considering multiple documents, or using a "combination approach," is sufficient because it provides the Court with a "reasonable basis to evaluate the claim of [the deliberative process] privilege." *Heffernan v. Azar*, 317 F.Supp.3d 94, 117 (D.D.C 2018) (quoting *Gallant v. NLRB*, 26 F.3d 168, 172–73 (D.C. Cir. 1994); *see also DiBacco v. U.S. Army*, 795 F.3d 178, 186 n.2 (D.C. Cir. 2015) ("Although agencies frequently rely on *Vaughn* indices, [t]he materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege." (alteration in original) (citation and internal quotation marks omitted)).

Additionally, although Plaintiff objects that "specific phrases appear multiple times," withheld information was "lumped together," and the SEC used "identical information," *see* Pl.'s Opp'n at 3–5, the fact that there are repeat phrases and similar explanations to characterize the information is not sufficient to claim that there was a lack of specificity in the *Vaughn* Index, as repetitive language is expected if the withheld records relate to the same subject matter.  *See Chavis v. U.S. Dep't Just.*, No. 1:20-cv-00638 , 2021 WL 1668069, at *10 (D.D.C. Apr. 28, 2021) ("FOIA does not prohibit the [agency] from recycling explanations if the same reasoning

applies to withhold information across multiple documents."); *Hall & Assocs. v. U.S. EPA*, 633 F. Supp. 3d 35, 73 (D.D.C. 2022) (approving *Vaughn* index where "many [] entries contain the same language . . . because many of the withheld documents are similar").  Courts have previously held that there is good reason for similar language to be included in *Vaughn* indices if they pertain to the same types of records.  *See Energy Pol'y Advocs. v. SEC*, No. 1:22-cv-01497, 2023 WL 6976071, at *5 ("If the Commission's descriptions here are repetitive, it is because the withheld messages relate to the same climate-related rulemakings.").  Accordingly, after assessing the entire record, the Court concludes that the SEC's *Vaughn* Index includes the sufficient detail necessary for withholding information under the deliberative process privilege.

The Court now turns to assessing whether the SEC meets the predecisional and deliberative requirements under the deliberative process privilege.  The SEC argues that the withheld information includes deliberations about the climate-related policy proposals, including information provided by third parties and discussions about how that information will be used.  Def.'s MSJ at 13.  Additionally, it argues that the withheld information "pre-dates the SEC's release of the climate-related proposed rules and reflects internal deliberation about those draft proposed rules."  Def.'s MSJ at 15.  Plaintiff claims that the SEC did not satisfy its burden because it did not provide a sufficient explanation for how the withheld information facilitated agency deliberation; instead, it "provide[d] boilerplate justification for its many (b)(5) redactions and includes only the names of the parties without explaining the role of those parties in any relevant decisionmaking process."  Pl.'s Opp'n at 6.

The Court holds that the predecisional requirement was met by the SEC.  The deliberations included in the withheld documents occurred before the SEC announced its proposed rules in March and May 2022, and the documents encompassing those discussions are

therefore predecisional.  The Court also holds that the deliberative requirement has been met because it is clear that the withheld information is "part of the agency give-and-take" of the decision that was ultimately made with respect to the rulemaking.  *Vaughn*, 523 F.2d at 1144. "The withheld information includes opinions and questions about data and information provided by a third party; discussion of the use of particular data and information in the development of the proposed rule; discussion about SEC staff attending meetings with external parties; draft language for the proposed rule and accompanying release, including the Paperwork Reduction Act section; issues, analysis, and potential next steps relating to the climate rulemaking; discussion about a draft meeting memorandum and the memorandum itself; discussion about reporting, consulting, and assurance costs; and discussion about components of climate policy development."  Reply at 6–7.  All of these conversations were part of the agency give-and-take by which the agency decisions regarding the proposed rules were made.

### 3.  "Foreseeable Harm" Requirement

As the D.C. Circuit has explained, "[f]inding the deliberative process privilege applicable . . . does not end the matter" because "the government may not withhold even those privileged materials unless it also 'reasonably foresees that disclosure would harm an interest protected by' the FOIA exemption."  *Reps. Comm.*, 3 F.4th at 369.  To justify the withholding of records, "[a]gencies cannot rely on "mere 'speculative or abstract fears,' or fear of embarrassment" but "must concretely explain how disclosure 'would'—not 'could'—adversely impair internal deliberations."  *Id*. at 369–70 (quotations omitted).  Additionally, "[a] -perfunctory state[ment] that disclosure of all the withheld information—regardless of category or substance—would jeopardize the free exchange of information between senior leaders within and outside of the [agency] will not suffice."  *Id*. at 370 (quotations omitted).  "Instead, what is needed is a focused

and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Id.*  Here, the Court finds that the SEC correctly understood the governing legal requirement and reasonably explained how "chill[ing] future internal discussions" would cause foreseeable harm.

The SEC argues that disclosing information that it withheld regarding the SEC's climate-related rulemaking and policy "would chill discussions in connection with the formulation of policy proposals for the Commission's consideration" and "could adversely affect rulemaking because good solutions are often found as staff share all possible approaches, even those that are ultimately dismissed."  SMF ¶¶ 32, 34.  The SEC explains that such a chilling effect would have a negative impact on the rulemaking process because it would "prevent robust discussions among SEC staff and other federal government agencies' staff in developing policies."  Def.'s MSJ at 18.  Plaintiff asserts, while citing to *Reporters Committee v. FBI*, that the SEC's arguments are "generalized and conclusory" and lack detail and specificity.  Pl.'s Opp'n at 15.

As set forth above, *Reps. Comm.* explains that "what is needed [to satisfy the foreseeable harm standard] is a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward."  3 F.4th at 370.  This "reasonable foreseeability of harm" standard requires the agency withholding records to explain any "context or insight into the specific decisionmaking processes or deliberations at issue, and how they in particular would be harmed by disclosure" of the contested records.  *Jud. Watch, Inc.*, 2019 WL 4644029, at *5 .  The SEC explains that '[w]hen deliberating about a rule, staff often determine that certain ideas have no merit and must be dismissed," "staff at all levels may change their views of what

approach is best during the process of drafting a rule," and "disclosure of SEC staff's candid analysis and assessment of information provided from outside parties may make SEC staff reluctant to openly discuss the strengthens and weaknesses of information from third parties, which would hurt the rulemaking process."  Decl. of Elizabeth M. Murphy ¶ 7, ECF No. 15-3 ("Murphy Decl.").  The SEC asserts that if its staff knew that such discussions could be released, "they would be reluctant to record their views and engage in open discussion during the rule drafting process."  Murphy Decl. ¶ 8.  This chilling effect "could adversely affect rulemaking because good solutions are often found as staff share all possible approaches, even those that are ultimately dismissed" and "[it] would also slow down the rulemaking process" because views would be shared in meetings instead of emails that can be circulated.  *Id*.

The SEC's explanation of foreseeable harm is not "generalized" nor "conclusory" because it contains focused and concrete explanations that have been found adequate in this Circuit.  In a similar case addressing the SEC's withheld records about climate rulemaking, this Court recently held that "it would be hard to imagine content more clearly exemplifying the 'give-and-take of the consultative process' than informal internal agency dialogue about the nuts and bolts of a proposed rulemaking."  *Energy Pol'y Advocs.*, 2023 WL 6976071 at *4.  The D.C. Circuit has also held that an agency's affidavit adequately explained that disclosing its internal work product would "discourage line attorneys from candidly discussing their ideas . . . thus impairing the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals."  *Machado Amadis*, 971 F.3d at 371.  Here, the SEC explains how the disclosure of the withheld records including proposed changes and discussions about a proposed rulemaking would lead its staff to be less candid in future internal discussions, adversely affecting the agency's rulemakings.

Additionally, the SEC explains that "releasing the withheld information could also confuse the public by suggesting that views and approaches that were dismissed or changed during the drafting process were still relevant options being considered."  Def.'s MSJ at 17 (quoting SMF ¶ 35).  Plaintiff asserts that the public confusion argument lacks specificity, and any confusion caused by the regulations that have been adopted can be "easily resolve[d] . . . by assuring the public."  Pl.'s Opp'n at 2.  In response, the SEC argues that Plaintiff does not meaningfully address the harms that it explained, such as "chilling discussions about the formulation of policy proposals and adversely affecting the development of rulemaking" (Reply at 9) and "suggesting that views and approaches that were dismissed or changed during the drafting process were still relevant options being considered" (Murphy Decl. at ¶ 9).  Here, the SEC has satisfied its burden.  "[T]he D.C. Circuit has long recognized that the risk of public confusion 'has a special force with respect to disclosures of agency positions or reasoning concerning proposed policies.'" *Reps. Comm. for Freedom of the Press v. U.S. CBP*, 567 F. Supp. 3d 97, 122 (D.D.C. 2021) (quoting *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1436 n.10 (D.C. Cir. 1992)).  Because the withheld records include candid discussions that might contradict the final rulemaking, it would cause harmful confusion.  Ultimately, the SEC "has adequately explained the sensitive nature of the information contained in the withheld [records], the important role these exchanges play in its decisional process, and the effect disclosure would have on similar future exchanges."  *Energy Pol'y Advocs.,* 2023 WL 6976071 at *67.  The SEC provides specific explanations for how releasing this withheld information would harm future open discussions; and therefore, the SEC met its burden to satisfy the foreseeable harm requirement under FOIA Exemption 5.

#### D.  Segregability

Finally, the Court considers whether the SEC has produced all segregable, nonexempt information.  *See Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 851 (D.C. Cir. 2010).  "To meet its burden on segregability, a government agency must usually submit a sufficiently detailed *Vaughn* Index for each document and an affidavit or declaration stating that it has released all segregable material."  *Bloche v. Dep't of Def.*, 370 F. Supp. 3d 40, 55 (internal citations omitted). Plaintiff argues that the withheld records "could be releasable and warrant disclosure" and that "no effort was taken . . . to segregate confidential portions of information from nonconfidential portions of information."  Pl.'s Opp'n at 4, 8–9.  The SEC responds that it properly conducted a segregability analysis, and "providing additional information contained in the records would expose SEC staff's deliberations about developing climate rulemaking and policy as well as proprietary confidential information belonging to Persefoni and ERM" that is appropriately subject to FOIA exemptions.  Reply at 11.

The SEC's position is correct.  "FOIA requires that if a document contains information that is exempt from disclosure, any 'reasonably segregable' information must be disclosed after redaction of the exempt portions, unless the non-exempt portions are 'inextricably intertwined' with the exempt portions."  *Moore*, 601 F. Supp. 2d at 16  (quoting 5 U.S.C. § 552(b); *Mead Data Cent.,* 566 F.2d at 260 ).  As the SEC articulates, it "conducted a line-by-line review" of responsive records and "provided all non-exempt information that could be segregated from exempt information."  SMF ¶ 41.  The D.C. Circuit has previously held that an agency satisfied its segregability burden when it attested that it had "conducted a page-by-page and line-by-line review, and released all reasonably segregable, non-exempt information within responsive records."  *Porup v. Cent. Intel. Agency*, 997 F.3d 1224, 1239 (D.C. Cir. 2021).  Here, the Court

concludes that the SEC's "sworn statements sufficiently establish that 'no portions of the [fully] withheld documents may be segregated and released.'" *Id*.  Plaintiff has not raised any issues that call that assertion into question.  To the contrary, the fact that a large portion of the documents the SEC disclosed were redacted, rather than withheld in full, *see* SMF ¶¶ 5, 8, 9, is indicative of the SEC's effort to carefully segregate exempt information from non-exempt information.  *See Bigwood v. U.S. Dep't of Def.*, 132 F.Supp.3d 124, 150 (D.D.C. 2015) (holding that the agency releasing pages with "interspersed redactions" demonstrates that it "conducted a line-by-line review to ensure that it provided all reasonably segregable information.").  As such, the Court finds that the SEC has met its segregability obligations because it has segregated and released what non-exempt information it could.

## V.  CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion for summary judgment. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  October 17, 2024                                          RUDOLPH CONTRERAS
                                                                                   United States District Judge